**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

MARJORIE SHEPHERD                                CIVIL ACTION NO. 14-2623

VERSUS                                                      JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                  MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 22) filed by Defendants, the City of Shreveport ("the City") and Corporal Phillip Tucker ("Cpl. Tucker"). Defendants seek dismissal of the federal claims against Cpl. Tucker on the ground of qualified immunity. They seek dismissal of the <u>Monell</u> claims against the City on the ground that there is no custom, policy or practice of infringing constitutionally protected rights. Defendants also seek dismissal of all state law claims. Plaintiff Marjorie Shepherd (hereinafter "Plaintiff" or "Ms. Shepherd") opposes the Motion for Summary Judgment, arguing there are genuine disputes of material fact. <u>See</u> Record Document 30. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED** and all claims against Defendants are **DISMISSED WITH PREJUDICE.**

**I.      BACKGROUND**

On October 15, 2013, the Shreveport Fire Department received a 911 call regarding an individual who had possibly suffered a seizure at 514 Americana Drive in Shreveport, Louisiana. <u>See</u> Record Document 22-3 at ¶ 1; Record Document 30-1 at ¶ 1; <u>see also</u> Record Document 22, Exhibit 1 (First 911 Call). The 911 caller, Jerri Zuniga ("Zuniga"), indicated that the patient, John Shepherd ("Shepherd"), was potentially violent stating that "he's gonna kill me." <u>Id.</u> at ¶ 2; Record Document 30 at ¶ 2; <u>see also</u> Record Document

22, Exhibit 1 at 4:30- 5:00.  When asked by the dispatcher why, Zuniga responded "because he has bad drug and alcohol problems" and "it's like he knows I called somebody." Id.

The Shreveport Fire Department requested assistance from the Shreveport Police Department.  See id. at ¶ 3; Record Document 30-1 at ¶ 3; see also Record Document 22, Exhibit 2 (Radio Dispatch).  Cpl. Tucker was dispatched after having received a communication from dispatch that the patient, Shepherd, had suffered a seizure and was "violent." Id.  Cpl. Tucker also received a text dispatch that the male patient was "getting combative with the female for calling" and that the female caller "thinks he is going to hurt her." Id. at ¶ 3; Record Document 30-1 at ¶ 3; see also Record Document 22, Exhibit 4 (Text Dispatch).[1]

While Cpl. Tucker was en route to 514 Americana, Shreveport Fire Department firefighters entered Shepherd's residence, at which time Shepherd armed himself with a knife and confronted the firefighters.  See at ¶ 4; Record Document 30-1 at ¶ 4; see also Record Document 22, Exhibits 6-9.  Shepherd chased the firefighters out of the residence while armed with the knife.  See id.  The knife was eight inches long, with a four inch blade. See Record Document 22, Exhibit 12.  Based on the conduct of Shepherd, the dispatch was updated to notify Cpl. Tucker that the call had been expedited because the patient was armed with a knife.  See Record Document 22-3 at ¶ 5; Record Document 30-1 at ¶ 5; see also Record Document 22, Exhibits 3 & 5 (MVS Recording).

---

[1]There is no dispute that police officers such as Cpl. Tucker do not hear the 911 calls.  See Record Document 22-3 at ¶ 3.  They only hear and know what is relayed by radio dispatch or text dispatch.  See id.

After the updated dispatch, a neighbor called 911 and reported that there has been shots fired.  See id. at ¶ 6;  Record Document 30-1 at ¶ 6; see also Record Document 22, Exhibit 10 (Second 911 Call).  The dispatch was updated against to notify Cpl. Tucker that there was a report of shots fired in the area.  See id. at ¶ 7; Record Document 30-1 at ¶ 7; see also Record Document 22, Exhibits 2, 3 & 5.  Shreveport Fire Department Captain Michael Lawson, who was on scene at 514 Americana, updated dispatch that no shots were fired on scene.  See Record Document 30-3 at 49.  It does not appear that Cpl. Tucker treated the scene or approached the scene as though shots had been fired.  See Record Document 30-1 at ¶¶ 6-7.

Cpl. Tucker was the first police officer to arrive on the scene at 514 Americana.  See Record Document 22-3 at ¶ 8; Record Document 30-1 at ¶ 8; see also Record Document 22, Exhibit 3 (Tucker Affidavit).  He arrived on scene at approximately 19:51:30 of the MVS recording.  See Record Document 22, Exhibit 5.  The MVS recording shows that it was raining at the time of Cpl. Tucker's arrival.  See id.  The MVS recording also shows Cpl. Tucker retrieving a shotgun from his car when he arrived on scene.  See id.; see also Record Document 30-1 at ¶ 31.

Upon his arrival, the paramedics identified Shepherd as the person with a knife and also told Cpl. Tucker that there was at least one person in the residence, the female caller referenced in the dispatch call.  See Record Document 22-3 at ¶ 8; Record Document 30-1 at ¶ 8; see also Record Document 22, Exhibit 3 (Tucker Affidavit).  While Cpl. Tucker knew Shepherd had possibly suffered a seizure, he was not informed that Shepherd suffered from any mental illness or disorder.  See id. at ¶ 9; Record Document 30-1 at ¶ 9; see also Record Document 22, Exhibit 3.

At 19:51:50 of the MVS recording, Cpl. Tucker can be seen walking toward the firetruck with his shotgun.  <u>See</u> Record Document 22, Exhibit 5.  At the time Cpl. Tucker arrived on scene, Shepherd was standing near the street, between the firetruck and the house.  <u>See</u> Record Document 22-3 at ¶ 10; Record Document 30-1 at ¶ 10; <u>see</u> <u>also</u> Record Document 22, Exhibits 3 and 5.  Shepherd was holding a knife.  <u>See id.</u>  Shortly after arriving at 514 Americana and after exiting his vehicle and moving toward the residence, Cpl. Tucker stated on the radio, "Sarge, expedite."  <u>See id.</u> at ¶ 11; Record Document 30-1 at ¶ 11; <u>see also</u> Record Document 22, Exhibit 5.  The dispatcher also asked Cpl. Tucker if he needed a "33," which is a method to stop all radio communications on one of the two radio channels used and a procedure only used in serious incidents.  <u>See id.</u>  Cpl. Tucker responded, "10-4."  Record Document 22, Exhibit 5.  While Shepherd never verbally threatened Cpl. Tucker, Plaintiff admits that Shepherd cursed two or three times by stating, "fuck you."  Record Document 30-1 at ¶ 33.

The following factual information is drawn from the Court's careful and close review of the MVS recording from Cpl. Tucker's patrol car dash-mounted camera.  <u>See</u> Record Document 22, Exhibit 5.  Again, there is no dispute that at the time Cpl. Tucker arrived on scene, Shepherd was standing near the street, between the firetruck and the house, and he was holding a knife.  Cpl. Tucker made multiple verbal commands for Shepherd to "get down"; "lay down"; and "get down on the ground."  <u>Id.</u> at 19:52:22-54.  Shepherd disregarded those commands and began to move away from Cpl. Tucker towards the residence.  <u>See id.</u> at 19:52:55.  As Shepherd began to move back towards the residence, Cpl. Tucker tells Shepherd, "Come to me now."  <u>Id.</u> at 19:52:55.  This is the only time, as evidenced by the video and audio recordings, that Cpl. Tucker told Shepherd to move

towards him.

Shepherd entered the garage of the residence at approximately 19:53:07 on the MVS recording.  See id.[2]  Shortly thereafter, Cpl. Tucker can be heard asking, "hey, can somebody give me some lights" and the video shows firefighters returning to the firetruck. See id.  At approximately 19:53:28 on the MVS recording, Cpl. Tucker instructs Shepherd, who is in the garage, to get his hands up.  See id.  He gives this command two more times at approximately 19:53:39 and 19:53:44 of the MVS recording.  See id.  At approximately 19:53:49, Shepherd can be seen leaving the garage.  See id.

Beginning at approximately 19:53:45 of the MVS recording, Cpl. Tucker begins backing up.  See id.  This is also the approximate time that Shepherd begins to leave the garage and the MVS recording shows Cpl. Tucker backing away as Shepherd moves out of the garage.  See id.  At 19:53:48-49 of the MVS recording, Cpl. Tucker tells Shepherd to "get back."  Id.  From 19:53:49 to 19:53:50, Shepherd begins walking down the incline of the driveway toward Cpl. Tucker.  See id.  Cpl. Tucker believed that Shepherd was accelerating toward him.  See Record Document 22-7 at ¶ 3.  Ms. Shepherd contends that Shepherd stumbled or shuffled toward Cpl. Tucker.  See Record Document 30-1 at ¶ 15.

Cpl. Tucker shot Shepherd at approximately 19:53:51 of the MVS recording.  See Record Document 22, Exhibit 5.  The MVS recording shows Shepherd fall forward after he was shot.  See id. at 19:53:52-53.  This was approximately two minutes after Cpl. Tucker arrived on scene.  Cpl. Tucker used lethal force when Shepherd was approximately ten feet away from him.  See Record Document 22-7 at ¶ 3.  Plaintiff likewise admits that

---

[2]According to Plaintiff, Shepherd "retreated into his garage where he sat down in a lawn chair that he commonly used to smoke cigarettes."  Record Document 30-1 at ¶ 39.

Shepherd was shot when he "came within [ten] feet" of Cpl. Tucker. <u>See</u> Record Document 30-1 at ¶ 42. As will be discussed *infra*, while there is no dispute that Shepherd was holding a knife at the time of the shooting, there is a factual dispute regarding where the knife was located, <u>i.e.</u>, his arm raised with the knife above his head versus his arm and knife by his side, at the time of the shooting. The MVS recording is not clear enough to determine the location of the knife at the time of the shooting. Cpl. Tucker stated that Shepherd raised the knife above his head as he approached Cpl. Tucker. <u>See</u> Record Document 22-7 at ¶ 3. Firefighters David Morgan, Daniel Marze, Sharon Sullivan, and Michael Lawson also stated in their depositions that Shepherd raised the knife over his head as he advanced down the driveway and immediately prior to being shot. <u>See</u> Record Document 22-10 at 47; Record Document 22-11 at 44; Record Document 22-12 at 46; Record Document 22-13 at 75. Conversely, Ms. Shepherd maintains that Shepherd did not have his hands raised with a knife in a threatening manner and that his hands were by his side. <u>See</u> Record Document 30-1 at ¶ 15. Ms. Shepherd points to the declarations of Zuniga and neighbor Laurel Brightwell ("Brightwell"), both of whom maintain that Shepherd's hands were by his side at the time of the shooting. <u>See id.</u>

After the shooting, Shepherd was treated by the Shreveport Fire Department medics on scene and was then transported to University Health Shreveport. <u>See</u> Record Document 1 at ¶ 22. He was pronounced dead at University Health Shreveport. <u>See id.</u> at ¶ 23.

Plaintiff filed the instant lawsuit on behalf of her deceased son. <u>See</u> Record Document 1. She alleges a Section 1983 excessive force against Cpl. Tucker; <u>Monell</u> claims against the City; and state law claims against Cpl. Tucker and the City. <u>See id.</u> Cpl.

Tucker and the City have now filed a Motion for Summary Judgment and seek dismissal with prejudice of all claims.  <u>See</u> Record Document 22.

## II.      LAW AND ANALYSIS

### A.      Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment.  This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F.R.C.P. 56(a).  Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record."  F.R.C.P. 56(c)(1)(A).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment."  F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotations and citations omitted).  If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists.  <u>See id.</u> at 324, 106 S.Ct. at 2553; <u>see</u> <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).  A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical

doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  Little, 37 F.3d at 1075.

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014).  However, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should "review[ ] the facts in the light depicted by the videotape."  Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 1776 (2007); see also Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.").  Further, the court should not, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts.  See Little, 37 F.3d at 1075.

**B.     Defendants' Objections to Plaintiff's Summary Judgment Evidence.**

Defendants object to Plaintiff's summary judgment evidence regarding the testimony of Zuniga, expert Marshall Nelson ("Nelson"), and Brightwell.  See Record Document 33. Defendants' objections (Record Document 33) provide little more than cursory argument. In their reply, Defendants provide additional argument and also object to the expert testimony of James Ruiz ("Ruiz").  See Record Document 49.

As to Nelson, Defendants contend that his expert opinions are not material, are not probative, and do not assist the trier of fact.  See id. at 2.  More specifically, they note that

Nelson is not Taser certified, yet he opined that Cpl. Tucker should have used a Taser as less lethal force. See id. Defendants argue that Ruiz's testimony will not be helpful to the Court and point to Ruiz's admission that he failed to listen to the audio recording of the incident at issue in this case. See Record Document 49 at 3. Defendants have not filed a Daubert motion challenging either Nelson or Ruiz's expert testimony. The Court has reviewed the expert reports of both Nelson and Ruiz. See Record Document 30-2. The reports include their educational and professional backgrounds in law enforcement. See id. Based on the showing made by Defendants, the Court **OVERRULES** the defense objections as to Nelson and Ruiz's expert testimony. The Court is able to differentiate between permissible expert testimony as to law enforcement training and procedure versus impermissible conclusions of law. Moreover, while the denial of summary judgment must be based on facts that would be admissible in evidence, the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. See Celotex Corp., 477 U.S. 317 at 324, 106 S.Ct. at 2553.

As to Brightwell, Defendants complain that Brightwell was not identified as a witness until the day discovery closed. See Record Document 33 at 2. They also argue that her testimony is vague and irrelevant. See id. The Court disagrees, as Brightwell was an eyewitness to the incident. Defense counsel was notified of Brightwell as a potential witness as soon as Plaintiff's counsel learned of her existence and the Court does not believe this was an instance of "sandbagging." See Record Document 47 at 15; Record Document 49 at 9. Moreover, Brightwell was interviewed by a detective from the Shreveport Police Department months after the incident and, in February 2016, she was interviewed by defense counsel. See id. at 15-16. Plaintiff's counsel also does not object

to Defendants deposing Brightwell at a later date. <u>See id.</u> The Court does not believe that Brightwell's sworn declaration is unduly prejudicial to Defendants. For these reasons, the Court **OVERRULES** the defense objections as to Brightwell.

Defendants' objection relating to Zuniga requires closer analysis. Defendants contend that Zuniga's affidavit contradicts her deposition testimony and "Plaintiff offers no explanation" for the conflict. <u>See</u> Record Document 33 at 1-2. Affidavits are a permissible and common form of evidence that may be used to oppose a motion for summary judgment. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S.Ct. at 2553. To be competent summary judgment evidence, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." F.R.C.P. 56(c)(4). However, a ***party*** may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches sworn testimony without explanation. <u>See</u> <u>S.W.S. Erectors v. Infax, Inc.</u>, 72 F.3d 489, 495 (5th Cir. 1996) (emphasis added). If a party submits such a sham affidavit, the Court may properly disregard or strike such an affidavit. <u>See id.</u> at 495-496; <u>see also</u> <u>Doe ex rel. Doe v. Dallas Indep. Sch. Dist.</u>, 220 F.3d 380, 385-386 (5th Cir. 2000).

In her deposition, Zuniga testified as follows:

Q.    Okay. And the officer and the firemen all stated that John was in the garage and then left the garage, began moving very quickly with the knife raised when he was shot. Do you have any basis to dispute that?

A.    I know he was walking down towards the officer. But I don't know --
I don't know if he had anything raised.

Record Document 33-1 at 68-69. Later, in a sworn declaration, Zuniga stated:

At the moment of the shooting, John's hand were along the side of his body.

At the moment of the shooting, John did not have his hands raised in any threatening manner.

Record Document 30-3 at ¶ 12. After the defense filed the instant objections, Zuniga submitted another sworn declaration:

> I gave my deposition testimony on what it is I saw and heard that night on October 15, 2013. I testified that I didn't know if John Shepherd had anything raised as my way of stating I didn't see anything raised. Probably the better way to answer the question is, "I don't remember or think he had anything raised."
>
> I didn't see anything raised. I testified I didn't know if Shepherd had a knife raised because I didn't see any evidence of a knife raised.
>
> I was confused by the question when the defense attorney made a statement or interpretation of what the fire personnel had testified.

Record Document 47-1.

Defendants object to Zuniga's sworn declaration, arguing that it is contradicted by her earlier deposition testimony. The S.W.S. Erectors court held that a party cannot defeat a motion for summary judgment by relying on facts in an affidavit that clearly contradicts the party's prior deposition testimony. See S.W.S. Erectors, 72 F.3d at 495-496. The basis of the S.W.S. Erectors decision was that courts should view contradictory evidence offered by interested parties with suspicion, especially when, for purposes of summary judgment, an interested party attempts to invalidate damaging deposition testimony by correcting it with a later, inconsistent sham affidavit. Here, Zuniga is not a party to the instant action. Zuniga's second sworn declaration (Record Document 47-1) also offers an explanation as to the discrepancies between her deposition testimony and sworn declaration. Thus, under the limited facts and circumstances presented by the instant matter, the Court **OVERRULES** the defense objections as to Zuniga.

### C.    Qualified Immunity Standard.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir.2003).  Once the defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008).  "Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment." Mace, 333 F.3d at 624, citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).

The court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. See Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.2007).  First, the court must determine whether the defendant violated the plaintiff's constitutional rights. See id.  "If so, [the court] next consider[s] whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. at 410-411.  Even on summary judgment, courts can not ignore that qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012).

### D.    Analysis of Section 1983 Excessive Force Claim Against Cpl. Tucker.

There is no dispute that Shepherd was holding a knife at the time of the shooting. The primary issues raised by Plaintiff in the instant motion are whether lesser force should have been used and whether Cpl. Tucker would be entitled to qualified immunity even if

the knife was by Shepherd's side, i.e., the knife was not raised, at the time of the shooting. At this juncture, the Court must view the evidence in a light most favorable to Plaintiff by assuming, for the purposes of this motion, that the knife was not raised and it was by Shepherd's side at the time of the shooting.

### 1. Whether Cpl. Tucker's Conduct Violated the Fourth Amendment; Qualified Immunity.

"To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008) (internal quotations and citations omitted). The reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.Ct. at 1872. Here, Shepherd was not being placed under arrest for any suspected crime. Thus, the key inquiry under Graham is whether Shepherd "posed an immediate threat to the safety of the officers or others." Id. The "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." Mace, 333 F.3d at 624. Courts must "balance the amount of force used against the need for force," paying "careful attention to the facts and circumstances of each particular case." Ramirez, 542 F.3d at 129.

The Fifth Circuit has held that "[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's]

shooting." <u>Harris v. Serpas</u>, 745 F.3d 767, 772 (5th Cir. 2014), citing <u>Bazan ex rel. Bazan</u> <u>v. Hidalgo Cnty.</u>, 246 F.3d 481, 493 (5th Cir.2001). Thus, the officers' actions leading up to a shooting are irrelevant for the purposes of an excessive force inquiry in the Fifth Circuit. <u>See Harris</u>, 745 F.3d at 772. This Court is bound to consider the "moment of the threat" that resulted in Cpl. Tucker's use of deadly force. <u>Id.</u>

In the instant case, there is no dispute that Shepherd was holding a knife at the time of the shooting. Cpl. Tucker and other firefighters stated in affidavits and depositions that Shepherd was moving quickly and accelerating down the driveway toward Cpl. Tucker. <u>See</u> Record Document 22-7 at ¶ 3; Record Document 22-10 at 46-47; Record Document 22-11 at 43; Record Document 22-12 at 46; Record Document 22-13 at 75. Even Plaintiff concedes that Shepherd was stumbling or shuffling toward Cpl. Tucker. <u>See</u> Record Document 30-1 at ¶ 15. Cpl. Tucker explained in his affidavit:

> I used lethal force because there was an immediate threat of serious injury or death to me and others, in addition to me the firefighters who were nearby. . . . I only use[d] lethal force at the point I believed I was about to be seriously injured and when I believed lethal force was necessary. I believed Mr. Shepherd was moving towards me faster than I could move backwards.

Record Document 22-7 at ¶ 4. Cpl. Tucker also possessed information that the female 911 caller remained in the home and was concerned for her safety. Less than two minutes after arriving on scene, Cpl. Tucker was confronted with an armed individual who had disobeyed a verbal order to get down, was in close proximity to him, and was moving closer. At the time of the shooting or "moment of the threat," the Court further notes that Cpl. Tucker was backing down an inclined driveway in the rain.

Under the totality of the circumstances and irrespective of whether the knife was over Shepherd's head or by his side, this Court finds that Cpl. Tucker reasonably believed

that Shepherd posed a threat of serious harm to the officer and/or to others. The reasonableness of Cpl. Tucker's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. 1865. Thus, Cpl. Tucker's use of force was justified because lethal force was not clearly excessive under Ramirez, 542 F.3d at 128. Additionally, even if Cpl. Tucker's conduct had violated the Fourth Amendment, he is entitled to qualified immunity, as his actions were not objectively unreasonable in light of clearly established law at the time of the conduct in question.

The Court's conclusion is supported by Fifth Circuit case law. In Clayton v. Columbia Cas. Co., 547 Fed.Appx. 645 (5th Cir. 2013), the Fifth Circuit affirmed the district court's summary judgment in favor of Deputy Johnson. The district court had concluded Deputy Johnson's "use of deadly force was justified by the presence of an immediate threat of serious harm or death to himself or others and, therefore, did not violate the Fourth Amendment, irrespective of whether Clayton held a knife at the moment the Deputy shot him; and, in the alternative, if the Deputy's conduct violated the Fourth Amendment, a reasonable officer in his position would not have known the use of deadly force was unlawful in the light of clearly-established law, vesting the Deputy with qualified immunity." Id. at 648. The Fifth Circuit noted that the deputy faced a threat of immediate harm and was justified in his use of deadly force when confronted with the following:

> [A]n individual who attacked his girlfriend with a metal bar, damaged her vehicle, and injured himself with a knife; his sister, Burke, threatened to shoot him; Clayton claimed he had a gun; he threatened to shoot the Deputy; he continued to "holler" and failed to obey the Deputy's orders to stop; he continued to walk toward the Deputy, causing him to move back toward Burke's house, even though the Deputy had a gun pointed at him; and the Deputy stood between Clayton and the victim, and other innocent

bystanders.

Id. at 650.  The Fifth Circuit further held that Deputy Johnson was entitled to qualified immunity even if there was no knife.  See id. at 652.

In Rice v. ReliaStar Life Ins. Co., 770 F.3d 1122 (5th Cir. 2014), the Fifth Circuit affirmed the district court's summary judgment and finding of qualified immunity in favor of Deputy Arnold, who had fatally shot Rice.  While Rice was allegedly holding a gun as compared to a knife, the Fifth Circuit noted that Deputy Arnold did not violate Rice's right to be free of excessive force where at the time Rice was shot, he was armed and moving toward the officers.  See id. at 1134-1135.  See, e.g., Harris, 745 F.3d at 770, 772-773 (holding that police officers had not violated Harris's right to be free from the use of excessive force when, after responding to a 911 call saying that Harris was suicidal, officers shot Harris when he stood up out of bed with a knife raised over his shoulder in a stabbing position and refused to drop the knife); Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012) (police officer had not used excessive force when Elizondo "ignored repeated instructions to put down the knife he was holding," and at the time the officer fired, Elizondo "was hostile, armed with a knife, in close proximity to [the officer], and moving closer").

Here, when looking at both the "moment of the threat" that resulted in Cpl. Tucker's use of deadly force and the totality of the circumstances, it is clear from the summary judgment evidence – namely the MVS recording – that Shepherd was armed, in close proximity to Cpl. Tucker, and continuing to move toward Cpl. Tucker despite being told to "get down."  Under these circumstances, Cpl. Tucker reasonably feared for his safety and the safety of others at the moment of the fatal shooting.  Likewise, Cpl. Tucker was reasonable in his belief that Shepherd posed a threat of serious harm to him and others

on scene.  Summary judgment in favor of Cpl. Tucker is granted and Plaintiff's Section 1983 excessive force claim is dismissed with prejudice.[3]

### E.  <u>Monell</u> Claims Against the City.

Plaintiff alleged Section 1983 municipal liability claims against the City based on failure to train and failure to institute certain policies regarding interaction with medical patients.  <u>See</u> Record Document 1 at ¶¶ 31-32.  Under Section 1983, municipal liability generally requires proof of three elements:  (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom. <u>See</u> <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001), citing <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978).  Municipal liability shall not be predicated on respondeat superior.  <u>See id.</u>  "The three attribution principles identified here - a policymaker, an official policy and the 'moving force' of the policy - are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  <u>Id.</u>

---

[3]Plaintiff seems to argue that Cpl. Tucker should have used "less lethal means," to include a Taser, highly pressurized water from the firehose, or a short retreat to await backup.  Record Document 30-1 at ¶ 22.  Here, the fatal shooting took place approximately two minutes after Cpl. Tucker arrived on scene.  Thus, without reaching the issue of whether these "less lethal means" were even viable, which is a topic covered by competing experts, this Court holds that Cpl. Tucker was not unreasonable in failing to recognize or pursue the use of a Taser, highly pressurized water, or a retreat.  <u>See</u> <u>Ramirez</u>, 542 F.3d 124 at 129-130 ("A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished.  The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.  Even where an officer acts negligently and contrary to police procedure, this court has failed to recognize a constitutional claim where a police officer used deadly force in response to a reasonable belief that an individual posed a threat of serious harm.") (internal citations omitted).

Plaintiff's <u>Monell</u> claims against the City fail as a matter of law because there was no underlying violation of the constitutional rights of Mr. Shepherd. <u>See Kennedy v. City of Shreveport</u>, No. CIV.A. 07-1049, 2008 WL 2437043, at *5 (W.D. La. June 13, 2008). As set forth previously in the Court's qualified immunity analysis, Plaintiff failed to demonstrate that Cpl. Tucker's actions were objectively unreasonable. Thus, there is an absence of an underlying constitutional violation and Plaintiff's Section 1983 claim against the City must be dismissed.

Moreover, Plaintiff advanced no argument opposing the dismissal of the <u>Monell</u> claims in her opposition. The failure to address the <u>Monell</u> claim amounts to abandonment of such claims. <u>See Milton v. Boise Cascade, LLC</u>, No. 08–1857, 2011 WL 285091, *2 (W.D.La. Jan. 25, 2011). In <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154 (5th Cir. 1983), the Fifth Circuit affirmed the district court's grant of summary judgment, reasoning:

> When T & N moved for summary judgment, Nicolet's opposition to the motion not only failed to present any data tending to establish the existence of a genuine issue of fact, but also completely failed even to refer to its alternative theories of recovery. Nicolet's silence continued through the summary judgment hearing and a motion for reconsideration; indeed, Nicolet never mentioned these theories again until this appeal. A plaintiff in his opposition to a motion for summary judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge, on appeal, by drawing on the pleadings resurrect the abandoned issue. Our review of the record convinces us that Nicolet abandoned its alternative theories of recovery by failing to present them to the trial court. Because Nicolet failed to raise a genuine issue of material fact on these theories as required by Fed.R.Civ.P. 56(e), the district court appropriately granted summary judgment for T & N on the whole case.

<u>Id.</u> at 1164 (internal citations and quotations omitted); <u>see also Keenan v. Tejeda</u>, 290 F.3d 252, 262 (5th Cir. 2002) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived."). Accordingly, summary judgment is granted as to

Plaintiff's <u>Monell</u> claims and such claims are dismissed with prejudice.

**F.    State Law Claims.**

Plaintiff has alleged violations of Louisiana Civil Code Article 2315 and the 1974 Louisiana Constitution, all in relation to the allegations of excessive force. <u>See</u> Record Document 1 at ¶¶ 33-37.  She has also asserted a vicarious liability claim against the City. <u>See id.</u>

"Louisiana's excessive force tort mirrors its federal constitutional counterpart." <u>Deville v. Marcantel</u>, 567 F.3d 156, 172 (5th Cir. 2009).  Thus, Plaintiff's state law excessive force/battery claim fails for the same reasons as the federal excessive force claim.  Any other residual state law negligence claims also fail because this Court has found Cpl. Tucker's actions to be reasonable under the qualified immunity analysis. Thus, Plaintiff's negligence claims are undermined.  <u>See Roten v. City of Minden</u>, No. 16-CV-0381, 2017 WL 1398655, at *8 (W.D. La. Apr. 18, 2017) ("The focus of the qualified immunity inquiry is reasonableness. By finding the actions of Engi and Young to be reasonable under the qualified immunity analysis, Roten's state law negligence claims are undermined.").

As to Plaintiff's claim under the Louisiana Constitution, Louisiana federal district courts have noted that principles embodied in the Fourth Amendment have been incorporated into Article I, Section 5 of the Louisiana Constitution. <u>See Todd v. City of Natchitoches, Louisiana</u>, 238 F.Supp.2d 793, 798-799 (W.D.La. 2002); <u>see also Molette v. City of Alexandria</u>, No. Civ. A CV040501A, 2005 WL 2445432, at *1 (W.D.La. September 30, 2005) & <u>State v. McKinney</u>, No. 93-KA1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, 1125.  Again, because the Court has found that Cpl. Tucker is entitled to

qualified immunity as to the Section 1983 excessive force claim arising under the Fourth Amendment, there is likewise no liability on the part of Cpl. Tucker for violation of Article I, Section 5 of the Louisiana Constitution.

Finally, in the absence of any underlying tortious conduct of City employees, there can be no vicarious liability on the part of the City.  See Cormier v. Lafayette City-Parish Consol. Govt., No. 11-31125, 2012 WL 4842272, *5 (5th Cir. Oct. 12, 2012); Bates v. McKenna, No. 11-1395, 2012 WL 3309381, at *7 (W.D. La. Aug. 13, 2012) ("[Plaintiff's] state law vicarious liability claim against the City also fails because ... there is no underlying tortious act on the part of [the defendant officer]"); Courville v. City of Lake Charles, 720 So.2d 789, 800 (La. App. 3 Cir. 1998) ("Because we affirm the finding of no negligence on the part of the LCPD officers, the claim of vicarious liability against the City must fall."). Thus, summary judgment is granted as to Plaintiff's state law claims and such claims are dismissed with prejudice.

## III.  CONCLUSION

Based on the foregoing analysis, the Court holds that Cpl. Tucker reasonably believed that Shepherd posed a threat of serious harm to the officer and/or to others and his use of force was justified and not excessive.  Alternatively, even if Cpl. Tucker's conduct had violated the Fourth Amendment, he is entitled to qualified immunity, as his actions were not objectively unreasonable in light of clearly established law at the time of the conduct in question.  The Court further holds that Plaintiff's Monell claims and state law claims fail, namely because there is no underlying constitutional violation on the part of Cpl. Tucker and/or Cpl. Tucker is entitled to qualified immunity.  Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Record Document 22) filed by Defendants be and is hereby **GRANTED** and all claims against Defendants are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of March, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT